UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-391 (RHK/FLN)

UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

2. STEVE KARLVELOUS CROOK,
4. DARREN LAMONT GARDNER, and
6. WILLIAM CURTIS DAMPIER,

                 Defendants.

**SUPERSEDING INDICTMENT**

18 U.S.C. § 2
18 U.S.C. § 1341
18 U.S.C. § 1349

<u>**COUNT ONE**</u>
(Conspiracy to Commit Mail Fraud)

THE UNITED STATES GRAND JURY CHARGES THAT:

1.     At times relevant to this Indictment:

      a.     Company A was a large food packaging and processing company based in the Chicago area. Company A has a food packaging plant located in Lakeville, Minnesota (the "Lakeville plant").

      b.     CHARLES MICHAEL COLES was employed as the MRO Buyer/Inventory Coordinator for Company A. In that position, COLES was responsible for ordering parts, submitting purchase orders, receiving shipments of parts, and maintaining the parts inventory at the Lakeville plant.

      c.     AARON ARTHUR ASH was the founder of "Rubber-Steel Products, LLC," a fictitious Minnesota limited liability company.

SCANNED

MAR 0 2 2015

U.S. DISTRICT COURT ST. PAUL

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

       d.     DARREN LAMONT GARDNER was the founder of "DG Automation Controls, LLC," a fictitious Minnesota limited liability company.

       e.     JACQUELINE ROBINSON was the founder of "Tessman Industrial Supply, LLC," a fictitious Minnesota limited liability company.

       f.     WILLIAM CURTIS DAMPIER was the founder of "A-Z Industrial Supply Co., LLC," a fictitious Arizona limited liability company.

       g.     Individual A was the founder of "Tri-Industrial Supply, LLC," a fictitious Minnesota limited liability company.

       2.     Beginning no later than 2011, and continuing through on or about November 14, 2014, at Lakeville, in the State and District of Minnesota, and elsewhere, the defendants,

**STEVE KARLVELOUS CROOK,**
**DARREN LAMONT GARDNER, and**
**WILLIAM CURTIS DAMPIER,**

knowingly conspired and agreed with each other, and others known and unknown to the Grand Jury, to devise and intend to devise a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, in doing so, did knowingly cause checks to be sent and delivered by the U.S. Postal Service for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341.

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

### Manner and Means of the Conspiracy

3.     It was part of the scheme that COLES concocted a scheme to fraudulently obtain money from Company A by submitting false invoices to Company A for industrial supplies and parts purportedly supplied by several fictitious industrial supply companies.

4.     It was further part of the scheme that COLES recruited CROOK, ASH, GARDNER, ROBINSON, DAMPIER, and Individual A to create fictitious industrial supply companies.

5.     It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly supplied by the fictitious industrial supply companies when, as COLES, CROOK, ASH, GARDNER, ROBINSON, DAMPIER, and Individual A knew, no such parts or suppliers were being provided to Company A.

6.     It was further part of the scheme that after Company A paid the fraudulent invoices, CROOK, ASH, GARDNER, ROBINSON, DAMPIER, and Individual A would split the proceeds with COLES.

7.     It was further part of the scheme that COLES, CROOK, ASH, GARDNER, ROBINSON, and DAMPIER and Individual A concealed, misrepresented, and caused to be concealed and misrepresented, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

United States v. Charles Michael Coles et al.                Criminal No. 14-391(RHK/FLN)

## **Karlvelous Supply**

8.      It was further part of the scheme that in or about April 2011, COLES recruited CROOK to participate in a scheme involving a fictitious industrial supply company called Karlvelous Supply.

9.      It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly provided by Karlvelous Supply when, as COLES and CROOK knew, Karlvelous Supply was not providing any parts or supplies to Company A.

10.     It was further part of the scheme that upon receipt of the fraudulent invoices submitted and approved by COLES, Company A issued checks to Karlvelous Supply in payment of the fraudulent invoices submitted by COLES. The checks were mailed from Company A to Karlvelous Supply at a mailbox that CROOK rented at a UPS store in White Bear Lake, Minnesota.

11.     It was further part of the scheme that after receiving payment from Company A for the fraudulent invoices submitted for parts and supplies purportedly supplied by Karlvelous Supply, CROOK split the proceeds with COLES.

12.     It was further part of the scheme that COLES and CROOK caused Company A to make approximately $582,224 in payments to Karlvelous Supply from approximately April 2011 to October 2014 on the basis of false and fraudulent invoices submitted by COLES.

United States v. Charles Michael Coles et al.          Criminal No. 14-391(RHK/FLN)

### Rubber-Steel Products, LLC

13.    It was further part of the scheme that in or about October 2011, COLES recruited ASH to form a fictitious industrial supply company called Rubber-Steel Products, LLC.

14.    It was further part of the scheme that on or about October 10, 2011, ASH registered Rubber-Steel Products, LLC with the Minnesota Secretary of State.

15.    It was further part of the scheme that ASH opened an account at U.S. Bank in the name of Rubber-Steel Products, LLC on or about October 11, 2012. ASH also rented a mailbox at a UPS store in Brooklyn Center, Minnesota, to receive mail for Rubber-Steel Products, LLC.

16.    It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly provided by Rubber-Steel Products, LLC when, as COLES and ASH knew, Rubber-Steel Products, LLC was not providing any parts or supplies to Company A.

17.    It was further part of the scheme that upon receipt of the fraudulent invoices submitted and approved by COLES, Company A made payments to Rubber-Steel Products, LLC based on the fraudulent invoices submitted by COLES. Company A paid the fraudulent invoices by either directly depositing money into the U.S. Bank account that ASH opened in the name of Rubber-Steel Products, LLC, or by mailing a check to Rubber-Steel Products, LLC at the mailbox that ASH rented at a UPS store in Brooklyn Center, Minnesota.

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

18.     It was further part of the scheme that after receiving Company A's payment to Rubber-Steel Products, LLC, ASH split the proceeds with COLES.

19.     It was further part of the scheme that COLES and ASH caused Company A to make approximately $512,218 in payments to Rubber-Steel Products, LLC between October 2011 and October 2014 on the basis of false and fraudulent invoices submitted by COLES.

### DG Automation Controls, LLC

20.     It was further part of the scheme that in or about December 2011, COLES recruited GARDNER to form a fictitious industrial supply company called DG Automation Controls, LLC.

21.     It was further part of the scheme that on or about December 15, 2011, GARDNER registered DG Automation Controls, LLC with the Minnesota Secretary of State.

22.     It was further part of the scheme that GARDNER opened an account at Guaranty Bank in the name of DG Automation Controls, LLC on or about December 19, 2011. GARDNER also rented a mailbox at a UPS store in Eden Prairie, Minnesota, to receive mail for DG Automation Controls, LLC.

23.     It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly provided by DG Automation Controls, LLC when, as COLES and GARDNER knew, DG Automation Controls, LLC was not providing any parts or supplies to Company A.

United States v. Charles Michael Coles et al.        Criminal No. 14-391(RHK/FLN)

24.    It was further part of the scheme that upon receipt of the fraudulent invoices submitted and approved by COLES, Company A made payments to DG Automation Controls, LLC based on the fraudulent invoices submitted by COLES. Company A paid the fraudulent invoices by either directly depositing money into the Guaranty Bank account that GARDNER opened in the name of DG Automation Controls, LLC, or by mailing a check to DG Automation Controls, LLC at the mailbox that GARDNER rented at a UPS store in Eden Prairie, Minnesota.

25.    It was further part of the scheme that after receiving Company A's payment to DG Automation Controls, LLC, GARDNER split the proceeds with COLES.

26.    It was further part of the scheme that COLES and GARDNER caused Company A to make approximately $409,191 in payments to DG Automation Controls, LLC from approximately January 2012 to October 2014 on the basis of false and fraudulent invoices submitted by COLES.

### Tessman Industrial Supply, LLC

27.    It was further part of the scheme that in or about January 2013, COLES recruited ROBINSON to form a fictitious industrial supply company called Tessman Industrial Supply, LLC.

28.    It was further part of the scheme that on or about January 22, 2013, ROBINSON registered Tessman Industrial Supply, LLC with the Minnesota Secretary of State.

29.    It was further part of the scheme that ROBINSON opened an account at HiWay Federal Credit Union in the name of Tessman Industrial Supply, LLC on or about

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

February 5, 2013. Robinson also rented a mailbox at a UPS store in St. Paul, Minnesota, to receive mail for Tessman Industrial Supply, LLC.

30.    It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly provided by Tessman Industrial Supply, LLC when, as COLES and ROBINSON knew, Tessman Industrial Supply, LLC was not providing any parts or supplies to Company A.

31.    It was further part of the scheme that upon receipt of the fraudulent invoices submitted and approved by COLES, Company A issued checks to Tessman Industrial Supply, LLC in payment of the fraudulent invoices submitted by COLES. The checks were mailed from Company A to Tessman Industrial Supply, LLC at the mailbox that ROBINSON rented at a UPS store in St. Paul, Minnesota.

32.    It was further part of the scheme that after receiving the checks mailed from Company A to Tessman Industrial Supply, LLC, ROBINSON split the proceeds with COLES.

33.    It was further part of the scheme that COLES and ROBINSON caused Company A to make approximately $253,881 in payments to Tessman Industrial Supply, LLC from approximately January 2013 to November 2014 on the basis of false and fraudulent invoices submitted by COLES.

United States v. Charles Michael Coles et al.          Criminal No. 14-391(RHK/FLN)

## A-Z Industrial Supply Co., LLC

34.    It was further part of the scheme that in or about May 2014, COLES recruited DAMPIER to form a fictitious industrial supply company called A-Z Industrial Supply Co., LLC.

35.    It was further part of the scheme that on or about May 28, 2014, DAMPIER registered, or caused to be registered, A-Z Industrial Supply Co., LLC with the Arizona Corporation Commission.

36.    It was further part of the scheme that DAMPIER opened an account at TCF Bank in the name of A-Z Industrial Supply Co., LLC on or about June 10, 2014.

37.    It was further part of the scheme that DAMPIER opened an account at U.S. Bank in the name of A-Z Industrial Supply Co., LLC on or about October 30, 2014.

38.    It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly provided by A-Z Industrial Supply Co., LLC when, as COLES and DAMPIER knew, A-Z Industrial Supply Co., LLC was not providing any parts or supplies to Company A.

39.    It was further part of the scheme that upon receipt of the fraudulent invoices submitted and approved by COLES, Company A made payments to A-Z Industrial Supply Co., LLC based on the fraudulent invoices submitted by COLES. Company A paid the fraudulent invoices by either directly depositing money into the TCF Bank account that DAMPIER opened in the name of A-Z Industrial Supply Co., LLC, or by mailing a check to A-Z Industrial Supply Co., LLC to DAMPIER's residence in Phoenix, Arizona.

9

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

40.     It was further part of the scheme that after receiving payment from Company A to A-Z Industrial Supply Co., LLC, DAMPIER split the proceeds with COLES.

41.     It was further part of the scheme that COLES and DAMPIER caused Company A to make approximately $47,666 in payments to A-Z Industrial Supply Co., LLC from approximately June to November 2014 on the basis of false and fraudulent invoices submitted by COLES.

### Tri-Industrial Supply, LLC

42.     It was further part of the scheme that in or about July 2014, COLES recruited Individual A to form a fictitious industrial supply company called Tri-Industrial Supply, LLC.

43.     It was further part of the scheme that on or about July 2, 2014, Individual A registered Tri-Industrial Supply, LLC with the Minnesota Secretary of State.

44.     It was further part of the scheme that Individual A opened an account at Wells Fargo Bank in the name of Tri-Industrial Supply, LLC on or about July 28, 2014. Individual A also rented a mailbox at a UPS store in Minneapolis, Minnesota, to receive mail for Tri-Industrial Supply, LLC.

45.     It was further part of the scheme that COLES submitted fraudulent purchase orders and invoices to Company A for parts and supplies purportedly provided by Tri-Industrial Supply, LLC when, as COLES and Individual A knew, Tri-Industrial Supply, LLC was not providing any parts or supplies to Company A.

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

46.     It was further part of the scheme that upon receipt of the fraudulent invoices submitted and approved by COLES, Company A made payments to Tri-Industrial Supply, LLC based on the fraudulent invoices submitted by COLES. Company A paid the fraudulent invoices by direct depositing money into the Wells Fargo Bank account that Individual A opened in the name of Tri-Industrial Supply, LLC.

47.     It was further part of the scheme that after receiving Company A's payment to Tri-Industrial Supply, LLC, Individual A split the proceeds with COLES.

48.     It was further part of the scheme that COLES and Individual A caused Company A to make approximately $10,271 in payments to Tri-Industrial Supply, LLC between approximately June and August 2014 on the basis of fraudulent invoices submitted by COLES.

## OVERT ACTS

49.     In furtherance of the conspiracy and to effect its unlawful objectives, COLES, CROOK, ASH, GARDNER, ROBINSON, and DAMPIER committed and caused to be committed the following overt acts among others:

a.     On or about April 12, 2011, COLES submitted a fraudulent purchase order and invoice to Company A for $9,260 in parts purportedly supplied to Company A by Karlvelous Supply.

b.     On or about April 29, 2011, CROOK cashed a $9,260 check from Company A to Karlvelous Supply in payment of a fraudulent purchase order and invoice submitted to Company A by COLES.

11

United States v. Charles Michael Coles et al.          Criminal No. 14-391(RHK/FLN)

      c.      On or about October 10, 2011, ASH registered Rubber-Steel Products, LLC with the Minnesota Secretary of State.

      d.      On or about October 11, 2011, ASH opened an account at U.S. Bank in the name of Rubber-Steel Products, LLC.

      e.      On or about December 15, 2011, GARDNER registered DG Automation Controls, LLC with the Minnesota Secretary of State.

      f.      On or about December 19, 2011, GARDNER opened an account at Guaranty Bank in the name of DG Automation Controls, LLC.

      g.      On or about January 12, 2012, COLES submitted a purchase order and invoice for the purchase of approximately $4,104 in parts and supplies purportedly supplied by DG Automation Controls, LLC.

      h.      On or about January 22, 2013, ROBINSON registered Tessman Industrial Supply, LLC with the Minnesota Secretary of State.

      i.      On or about January 24, 2013 COLES submitted a purchase order and invoice to Company A for approximately $3,682 in parts purportedly supplied to Company A by Tessman Industrial Supply, LLC.

      j.      On or about February 5, 2013, ROBINSON opened an account at HiWay Federal Credit Union in the name of Tessman Industrial Supply, LLC.

      k.      On or about May 28, 2014, DAMPIER registered A-Z Industrial Supply, LLC with the Arizona Corporation Commission.

      l.      On or about June 10, 2014, DAMPIER opened an account at TCF Bank in the name of A-Z Industrial Supply, LLC.

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

        m.      On or about June 12, 2014, COLES submitted a purchase order and invoice to Company A for $3,390 in parts purportedly supplied to Company A by A-Z Industrial Supply Co., LLC.

        n.      On or about June 30, 2014, DAMPIER withdrew approximately $1,000 in cash from an A-Z Industrial Supply Co., LLC account at TCF Bank.

        o.      On or about July 1, 2014, DAMPIER withdrew approximately $9,000 in cash from an A-Z Industrial Supply Co., LLC account at TCF Bank.

        p.      On or about July 3, 2014, DAMPIER withdrew approximately $1,000 in cash from an A-Z Industrial Supply Co., LLC account at TCF Bank.

        q.      On or about August 20, 2014, DAMPIER withdrew approximately $6,800 in cash from an A-Z Industrial Supply Co., LLC account at TCF Bank.

        r.      On or about August 27, 2014, DAMPIER withdrew approximately $2,000 in cash from an A-Z Industrial Supply Co., LLC account at TCF Bank.

        s.      On or about October 30, 2014, DAMPIER opened an account at U.S. Bank in the name of A-Z Industrial Supply, LLC.

        t.      On or about November 17, 2014, DAMPIER withdrew approximately $500 in cash from an A-Z Industrial Supply Co., LLC account at U.S. Bank.

        u.      On or about November 18, 2014, DAMPIER withdrew approximately $100 in cash from an A-Z Industrial Supply Co., LLC account at U.S. Bank.

        All in violation of Title 18, United States Code, Sections 1349 and 1341.

United States v. Charles Michael Coles et al.        Criminal No. 14-391(RHK/FLN)

## COUNT TWO
(Mail Fraud)

50.     The allegations in paragraphs 1, 20 to 26, and 49 of Count One are incorporated herein.

51.     On or about October 2, 2014, at Lakeville, in the State and District of Minnesota, and elsewhere, the defendant,

### DARREN LAMONT GARDNER,

aiding and abetting, and being aided and abetted by CHARLES MICHAEL COLES, for the purpose of executing the scheme described above, knowingly caused to be sent by the Postal Service certain matters or things, namely, an envelope containing a $6,590 check sent from Company A in Downers Grove, Illinois, to DG Automation Controls, LLC, in Eden Prairie, Minnesota;

In violation of Title 18, United States Code, Sections 1341 and 2.


## COUNT THREE
(Mail Fraud)

52.     The allegations in paragraphs 1, 34 to 41, and 49 of Count One are incorporated herein.

53.     On or about October 31, 2014, at Lakeville, in the State and District of Minnesota, and elsewhere, the defendant,

### WILLIAM CURTIS DAMPIER,

aiding and abetting, and being aided and abetted by CHARLES MICHAEL COLES, for the purpose of executing the scheme described above, knowingly caused to be sent by the

14

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

Postal Service certain matters or things, namely, an envelope containing a $1,182 check sent from Company A in Downers Grove, Illinois to A-Z Industrial Supply Co., LLC in Phoenix, Arizona;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOUR
(Mail Fraud)

54.    The allegations in paragraphs 1, 8 to 12, and 49 of Count One are incorporated herein.

55.    On or about October 21, 2014, at Lakeville, in the State and District of Minnesota, and elsewhere, the defendant,

### STEVE KARLVELOUS CROOK,

aiding and abetting, and being aided and abetted by CHARLES MICHAEL COLES, for the purpose of executing the scheme described above, knowingly caused to be sent by the Postal Service certain matters or things, namely, an envelope containing a $1,660 check sent from Company A in Downers Grove, Illinois to Karlvelous Supply in White Bear Lake, Minnesota;

In violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATIONS

56.    Counts One through Six are hereby realleged and incorporated by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

15

United States v. Charles Michael Coles et al.                    Criminal No. 14-391(RHK/FLN)

57.    As a result of his violations as alleged in Counts One through Six of the Indictment, the defendants,

**STEVE KARLVELOUS CROOK,
DARREN LAMONT GARDNER, and
WILLIAM CURTIS DAMPIER,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses charged in Counts One through Six.

58.    The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) include but are not limited to at least the sum of $1,833,892.

59.    If any of the property subject to forfeiture is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1349, and 1341, and Title 28, United States Code, Section 2461(c).


A TRUE BILL


_____           _____

UNITED STATES ATTORNEY                    FOREPERSON